UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION
NOE GONZALEZ, SR.,
et al.,

         Plaintiffs,

v.                           CASE NO. 8:04-CV-889-T-17TGW

CITY OF LAKELAND,
POLK COUNTY SHERIFF'S
OFFICE, JOHN MORT,
individually, and E.
RAUCH, individually,

         Defendants.

_____/

                         ORDER

     This cause is before the Court on:

     Dkt. 31 Motion for Summary Judgment
     Dkt. 39 Opposition

     The Complaint in this Section 1983 case includes: 1) Count I
as to Defendant City of Lakeland for false arrest/imprisonment;
2) Count II as to Defendant Polk County Sheriff's Office for
false arrest/imprisonment; 3) Count III as to Defendant John Mort
for violation of civil rights, 42 U.S.C. Sec. 1983; and 4) Count
IV as to Defendant E. Rauch, for violation of civil rights, 42
U.S.C. Sec. 1983.


     The Court conducted oral argument on the Motion on March 9,
2006.

Case No. 8:04-CV-889-T-17TGW

I.  Standard of Review

     Summary judgment is appropriate if the "pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue of material fact and that the moving party is
entitled to judgment as a matter of law."  Fed.R.Civ.P. 56 c.

          The plain language of Rule 56 c mandates the
          entry of summary judgment after adequate time
          for discovery and upon motion, against a
          party who fails to make a showing sufficient
          to establish the existence of an element
          essential to that party's case, and on which
          that party will bear the burden of proof at
          trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).


     Issues of fact are genuine only if a reasonable jury
considering the evidence presented could find for the non-moving
party. (Citation omitted).  Material facts are those which will
affect the outcome of the trial under governing law.   In
determining whether a material fact exists, the court must
consider all the evidence in the light most favorable to the non-
moving party.  See Sweat v. Miller Brewing Co., 708 F.2d 655, 656
(11th Cir. 1983).  All doubt as to the existence of a genuine
issue of material fact must be resolved against the moving party.
See Hayden v. First Nat'l Bank of Mt. Pleasant, 595 F.2d 994,
996-7 (5th Cir. 1979).

Case No. 8:04-CV-889-T-17TGW

II.  Facts

     The Amended Complaint (Dkt. 8) is based on the stop of
Plaintiffs' motor vehicle on November 3, 2001 by Defendant Mort,
of Lakeland Police Department, when the dispatcher of the
Lakeland Police Department notified Defendant Mort that the motor
vehicle was stolen.  Plaintiffs' motor vehicle resembled another
vehicle which was reported stolen.  The description of the stolen
vehicle was a "maroon extended cab Ford pickup last seen heading
north on Lakeland Hills Boulevard."  (Mort Deposition, p. 23).
The Lakeland Police Department dispatcher mistakenly confirmed
that the tag number was that of the stolen vehicle.

     Defendant Mort stopped Plaintiffs' vehicle and ordered
Plaintiff Noe Gonzalez out of his vehicle at gunpoint.  Plaintiff
Noe Gonzalez was handcuffed and placed in the back of a police
cruiser by Defendant Mort.  Defendant Rauch, of Polk County
Sheriff's Office, assisted Defendant Mort in the traffic stop.
Defendant Rauch ordered Plaintiff Maria Gonzalez out of the motor
vehicle at gunpoint, and forced her to kneel on the ground while
another law enforcement officer handcuffed her.

     The entire traffic stop took place during a twenty minute
time span.  Plaintiffs were released when the law enforcement
officers discovered that Plaintiffs' motor vehicle was their own
vehicle and not the stolen vehicle.

Case No. 8:04-CV-889-T-17TGW

III.  Defendants' Motion

     Defendants Rauch and Mort seek entry of summary judgment as
to Counts III and IV on the basis of qualified immunity.
Defendants argue that there was probable cause to stop, arrest
and briefly detain Plaintiffs.  Defendants also argue that there
was arguable probable cause for the stop and arrest.

     Defendants also argue that any claim under the Fourteenth
Amendment is foreclosed by the claims asserted under the Fourth
Amendment, and there is no viable claim under the Fifth
Amendment.

     Defendants City of Lakeland and Polk County seek entry of
summary judgment as to Counts I and II.  Defendants argue that
there was probable cause to stop, arrest and briefly detain
Plaintiffs, as well as arguable probable cause.

IV.  Plaintiffs' Response

     Plaintiffs argue that under the facts of this case
Plaintiffs' arrest was not reasonable, and Defendants are not
entitled to qualified immunity.  Plaintiffs argue that in light
of the totality of the circumstances, there was no probable cause
or arguable probable cause, the conduct of the law enforcement
officers was not reasonable, and they were deliberately
indifferent to Plaintiffs' due process rights.  Plaintiffs argue
that they repeatedly told Defendants the insurance papers and
registration were inside the vehicle, and the law enforcement
officers refused to answer Plaintiff Noe Gonzalez's question
immediately as to what was wrong with the registration, which

4

Case No. 8:04-CV-889-T-17TGW

Plaintiffs contend constitutes deliberate indifference.

    Plaintiffs argue that there were factual differences between
the motor vehicle that was reported stolen, and their vehicle,
that the alleged thief was a Black individual, and Plaintiffs are
Mexican individuals, and the law enforcement officers violated
their own agency's procedures and written General Orders.
Plaintiffs also argue that the law enforcement officers used
excessive force when the law enforcement officers stopped and
arrested Plaintiffs at gunpoint.

V.   Discussion

A.  Count III - Defendant Mort
B.  Count IV - Defendant Rauch

    Defendants have requested the entry of summary judgment on
the basis of qualified immunity due to the presence of actual
probable cause for Plaintiffs' arrest, as well as arguable
probable cause.

    It is undisputed that Defendants Mort and Rauch were acting
within the scope of their discretionary authority as law
enforcement officers when they stopped Plaintiffs' motor vehicle.
Defendant Mort testified that he was on patrol for the Lakeland
Policy Department when he received the call about the stolen
truck.  After seeing Plaintiffs' vehicle, which is somewhat
similar in appearance to the vehicle reported stolen, Defendant
Mort began following the vehicle (Dkt. 34-2, p. 72, L. 22-3) and
reported Plaintiffs' tag number to dispatch.  Dispatch reported
that the tag on Plaintiffs' vehicle was that of the stolen truck
(Dkt. 34-2, p. 75, L. 7-8).  Defendant Mort initiated a felony

Case No. 8:04-CV-889-T-17TGW

traffic stop based on the information from dispatch.

Defendant Rauch testified that he responded to the request of Lakeland Police Department Sergeant Walden for assistance with a confirmed stolen vehicle, a felony stop (Dkt. 32, p. 20, L. 19).

1.  Qualified Immunity

Since it is undisputed that the police officers were acting within their discretionary authority, the burden shifts to Plaintiffs to show that qualified immunity is not appropriate. The Court is required to consider the threshold question whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officers' conduct violated a constitutional right.  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiry.  If a violation could be made out on a favorable view of the parties' submissions, the next step is to ask whether the right was clearly established in the particular context of the case.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  See Saucier v. Katz, 121 S. Ct. 2151 (2001).

Plaintiffs contend that under the facts of this case, Plaintiffs were stopped, arrested and detained without probable cause.  Plaintiff argue that there was no actual probable cause or arguable probable cause to arrest Plaintiffs, because the conduct of Defendants was not reasonable based on the totality of

Case No. 8:04-CV-889-T-17TGW

the circumstances, and was deliberately indifferent towards
Plaintiffs' due process rights.

The Court notes that Plaintiffs and Defendants have
described the events of November 3, 2001 as a stop, a detention
and an arrest.  An investigatory stop is constitutionally
permissible when it is based on "reasonable suspicion" that
criminal activity has occurred or is occurring.   While
"reasonable suspicion" is a less demanding standard than probable
cause and requires a showing considerably less than preponderance
of the evidence, the Fourth Amendment requires at least a minimal
level of objective justification for making the stop."  <u>See</u>
<u>Illinois v. Wardlow</u>, 120 S.Ct. 673, 675-76).  The standard for
determining the presence of reasonable suspicion requires an
evaluation of the totality of the circumstances.

A law enforcement official who reasonably but mistakenly
concludes that reasonable suspicion is present is still entitled
to qualified immunity.  When an officer asserts qualified
immunity, the issue is not whether reasonable suspicion existed
in fact, but whether an officer had "arguable" reasonable
suspicion to support an investigatory stop.  <u>See</u> <u>Jackson v. Paul</u>,
206 F.3d 1156 (11th Cir. 2000).

An arrest must be supported by probable cause.  <u>See</u> <u>Wood v.</u>
<u>Kesler</u>, 323 F.3d 872 (11th Cir. 2003).  Probable cause is
established when "'the facts and circumstances within the
officer's knowledge, of which he or she has reasonably
trustworthy information, would cause a prudent person to believe,
under the circumstances shown, that the suspect has committed or
is about to commit an offense.'" <u>See</u> <u>Rankin v. Evans</u>, 133 F.3d

7

Case No. 8:04-CV-889-T-17TGW

1425 (11th Cir. 1998).  The standard for determining the presence
of probable cause requires an evaluation of the totality of the
circumstances.

An arrest without probable cause is unconstitutional, but
officers who make such an arrest are entitled to qualified
immunity if there was arguable probable cause for the arrest,
i.e. if a reasonable police officer, knowing what the Defendants
Mort and Rauch knew, could have believed that there was probable
cause for the warrantless arrest.  See Jones v. Cannon, 174 F.3d
1271 (11th Cir. 1999)(citing Gold v. City of Miami, 121 F.3d
1442, 1445 (11th Cir. 1997), cert. denied, 525 U.S. 870 (1998).
Arguable probable cause is distinct from actual probable cause.

As the Eleventh Circuit Court of Appeals has stated,
decisions of the Supreme Court and [the Eleventh Circuit] make
clear that what counts for qualified immunity purposes relating
to probable cause to arrest is the information known to the
defendant officers or officials at the time of their conduct, not
the facts known to the plaintiffs then or those known to a court
later.

Since a different standard applies to the stop of
Plaintiffs' vehicle and to any subsequent arrest, the Court will
address each issue separately.

2.   The Stop

Defendant Mort testified in his deposition that he began
following Plaintiffs' vehicle because it was similar to the
description of the stolen motor vehicle that was broadcast by the

Case No. 8:04-CV-889-T-17TGW

Lakeland Police Department. (Mort Deposition, p. 24). The
description which was broadcast did not include the tag number of
the stolen motor vehicle. Defendant Mort read the tag number of
Plaintiffs' vehicle to dispatch, who told Defendant Mort that
Plaintiffs' vehicle was the stolen vehicle. (Mort Deposition, p.
24). After this confirmation, Defendant Mort continued to follow
Plaintiff's vehicle while he waited for back-up units to assist
in the felony traffic stop (Mort Deposition, p. 25-26).

Sergeant Walden, Lakeland Police Department, communicated by
Nextel direct with Defendant Rauch, Polk County Sheriff's Office,
that Defendant Mort was following a confirmed stolen vehicle, and
asked Defendant Rauch to assist Defendant Mort. Defendant Rauch
testified in his deposition that he relied on Sergeant Walden's
statement that the Lakeland Police Department confirmed that the
vehicle was stolen (Rauch Deposition, p. 20).

To effect the stop, Defendant Mort stopped behind
Plaintiffs' vehicle at a traffic light. When Defendant Rauch
arrived, Defendant Mort signaled to Defendant Rauch that
Plaintiffs' vehicle was the confirmed stolen vehicle. Both
Defendants approached the vehicle with their guns drawn, and
shouted commands at Plaintiffs to exit the vehicle with their
hands up. Once Plaintiff Noe Gonzalez got out of his vehicle,
Defendant Mort direct Plaintiff to step behind the vehicle.
Defendant Mort then frisked and handcuffed Plaintiff, and placed
Plaintiff Noe Gonzalez in the back seat of Defendant's patrol
car.

9

Case No. 8:04-CV-889-T-17TGW

While Defendant Mort secured Plaintiff Noe Gonzalez, Defendant Rauch directed Plaintiff Maria Gonzalez to exit her vehicle.  After Plaintiff got out of her vehicle, another police officer handcuffed Plaintiff, took her down the road, and directed Plaintiff to kneel on the cement roadway.  Plaintiff Maria Gonzalez was not searched.

3.  The Test for Reasonable Suspicion

An investigatory stop requires only reasonable suspicion. See Terry v. Ohio, 392 U.S. 1 (1968).  In Terry, the Supreme Court adopted a dual inquiry for evaluating the reasonableness of an investigative stop: 1 "whether the officer's action was justified at its inception," which turns on whether the officers had a reasonable suspicion that the person stopped had engaged or was about to engage in a crime.  The second part of the inquiry requires the Court to determine whether the stop when too far and matured into an arrest before there was probable cause, that is, "whether [the stop] was reasonably related in scope to the circumstances which justified the interference in the first place."

4.  Facts Known by Defendants At Inception of Stop

In their Statement of Facts (Dkt. 39), Plaintiffs point out facts which Plaintiffs contend render the stop of their vehicle unreasonable:

Case No. 8:04-CV-889-T-17TGW

    1.  The description of the stolen motor vehicle
    broadcast by Lakeland Police Department was "1989 Ford
    Truck Extended Cab, burgundy and silver in color."
    Plaintiffs' truck was a 1999 Ford F 150, 4 door with
    extended cab, burgundy with gold trim.


    2.  There was a blue 5 gallon kerosene can in the truck
    bed of the stolen motor vehicle.


    3.  A black male stole the Pollock vehicle.  Plaintiffs
    are Mexican Americans.

Plaintiffs argue that when Defendant Mort took Plaintiff Noe

Gonzalez to the back of the car, he frisked him, handcuffed him,

and told Plaintiff Gonzalez that he was driving a stolen car.

Before Plaintiff was placed in the back of the police cruiser,

Plaintiff Gonzalez told Defendant Mort that all of his papers,

registration and insurance were in the truck in the sun visor

(Dkt. 39, p. 3), repeatedly asked what was wrong with the car

registration, and told Defendant Mort that Plaintiff purchased

the truck brand new.


    After Plaintiffs were secured in handcuffs, Defendant Rauch

searched Plaintiffs' motor vehicle and Defendant Mort searched a

computer database for the registered owner of the vehicle and its

status.  This search revealed that Plaintiffs' motor vehicle was

registered to Plaintiffs.


    Defendant Mort told Sergeant Moncrief, Lakeland Police

Department, that the motor vehicle was registered to Plaintiffs,

and Sergeant Moncrief directed Defendant Mort to release

Plaintiffs.  Sergeant Moncrief explained to Plaintiffs at that

time that the stop was based on mistaken information.  Plaintiffs

11

Case No. 8:04-CV-889-T-17TGW

were in handcuffs for approximately twenty minutes.

5.  The Stop Was Justified

In determining whether arguable reasonable suspicion is
present, the Court must determine whether a reasonable officer
who had the knowledge of Defendants Mort and Rauch could have
believed that stopping Plaintiffs' motor vehicle was lawful.

There is no dispute that Defendant Mort believed that
Plaintiffs' vehicle was a stolen vehicle at the time of the stop,
even though that belief was shown to be mistaken a short time
later.  Plaintiff Gonzalez notes that Defendant Mort told him so
when Defendant Mort took Plaintiff to the police cruiser.  The
knowledge that Plaintiffs' motor vehicle was stolen came to
Defendant Mort from a trustworthy source, the Lakeland Police
Department.  Defendant Rauch's knowledge came to Defendant Mort
from Sergeant Walden, Lakeland Police Department, and from
Defendant Mort, both of whom are trustworthy sources.  The Court
therefore finds that the stop of Plaintiffs' motor vehicle was
justified at its inception.

The factual differences between the stolen motor vehicle and
Plaintiffs' motor vehicle, the blue kerosene can and the identity
of the thief do not render the stop of Plaintiffs' vehicle
unreasonable by proving the absence of arguable reasonable
suspicion.  These issues provide a focus for Defendants'
investigation after the stop of the vehicle.  Defendants'
knowledge before the stop was that Plaintiffs' vehicle was a
confirmed stolen vehicle.

12

Case No. 8:04-CV-889-T-17TGW

Plaintiffs have argued that the publication by Polk County
Sheriff's Office of the correct tag number while Defendant Rauch
was responding renders his conduct unreasonable.  In his
deposition, Defendant Rauch testified as to his communication by
Nextel with Sergeant Walden, his participation in the traffic
stop, and the contents of his report.  There is no testimony that
establishes that knowledge of the correct tag number was within
Defendant's knowledge before initiation of the traffic stop, and
that Defendant Rauch had the opportunity to communicate the
correct tag number to Defendant Mort.  Defendant Rauch testified
that he relied on the knowledge of the Lakeland Police
Department, not the Polk County Sheriff's Office, and did not
independently verify the information.

Plaintiffs also argue that during the incident Plaintiff Noe
Gonzalez told Defendants that his registration papers and
insurance papers were within his vehicle.  While this fact is
relevant to the scope of the subsequent investigation, it does
not prove that the initial stop was without arguable reasonable
suspicion.

While Plaintiffs have argued the events on which their
Complaint is based should never have happened, and in fact could
have been avoided if Defendants had exercised more care, and that
the entire incident could have been resolved in a matter of
seconds with appropriate inquiry as to the correct tag on the
vehicle, the Eleventh Circuit Court of Appeals has directed the
Court to consider whether the police are acting in a swiftly
developing situation, and directed that in such cases the Court
should not indulge in unrealistic second-guessing.  See Courson
v. McMillian, 939 F.2d 1479 (11th Cir. 1991).

13

Case No. 8:04-CV-889-T-17TGW

Plaintiffs have argued that this case is similar to
Kingsland v. City of Miami, 383 F.3d 1220 (11th Cir. 2004), and
the Court should deny Defendants' Motion for summary Judgment.
In Kingsland, the Eleventh Circuit accepted the non-movant's
version of disputed facts, and concluded that the district
court's finding that probable cause and reasonable suspicion were
present could not stand.  The Eleventh Circuit found that there
were genuine issues of material fact whether the defendants: 1)
manufactured probable cause; 2) failed to conduct a reasonable
investigation, and 3) ignored certain facts within their
knowledge.  The district court's determination of qualified
immunity also could not stand because without further
factfinding, the district court could not determine whether
arguable probable cause existed when it was unclear how much of
the proffered evidence was manufactured or misrepresented, or
what further knowledge, if any, would be attributed to defendants
if they had investigated freely.

After consideration, the Court concludes that the factual
situation in this case is significantly different from the facts
of Kingsland.  In this case, there is no perceptible motive to
manufacture probable cause or reasonable suspicion, as there was
in Kingsland, and there is no genuine dispute that the entire
incident was based on a mistaken communication from the Lakeland
Police Department.  Sgt. Moncrief admitted the mistake of the
Lakeland Police Department to Plaintiffs at the time of the
incident.  Given the totality of the circumstances, the Court has
found there was arguable reasonable suspicion for the
investigative stop.

14

Case No. 8:04-CV-889-T-17TGW

6.   Whether Stop Became An Arrest Prematurely

The second part of the test for reasonableness under <u>Terry</u>
is to determine whether the stop went too far and matured into an
arrest before there was probable cause, that is, "whether [the
stop] was reasonably related in scope to the circumstances which
justified the interference in the first place."

At the outset, the Court notes that it is not convinced that
there was an arrest in this case.  The piece of knowledge that
triggered the stop was the identification of the vehicle as the
stolen vehicle, and the stop was executed as a felony traffic
stop, not a routine traffic stop, or a brief stop of a suspicious
individual in order to determine his identity or maintain the
status quo momentarily while obtaining more information.  While
the stop was more than momentary, it is not clear if and when the
Plaintiffs' detention became an arrest.  While Defendant Mort
indicated his belief that Plaintiff Noe Gonzalez was driving a
stolen vehicle, and placed Plaintiff in the back of the police
cruiser, Plaintiff was subsequently released before leaving the
scene.

An investigatory stop does not necessarily become an arrest
because the occupants of a vehicle are directed to exit their
vehicle.  <u>See</u> <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 110-11 (1977).
The display of weapons and the use of handcuffs also do not
transform an investigatory stop into an arrest.   <u>See</u> <u>United
States v. Blackman</u>, 66 F.3d 1572 (11th Cir. 1995).   An
investigatory stop is not an arrest despite the fact that a
reasonable person would not believe he was free to leave.   <u>Id</u>.
This circuit has recognized that when an officer does not take a

15

Case No. 8:04-CV-889-T-17TGW

detained individual to a police station or an office, this factor
indicates an investigatory stop rather than an arrest.  See
Courson v. McMillian, 939 F.2d 1479 (11th Cir. 1991) (citing
United States v. Berry, 670 F.2d 583, 602 (5th cir. Unit B 1982)
(en banc)).

The totality of the circumstances determines when an
encounter has become too intrusive to be classified as a seizure
and has become an arrest, requiring probable cause.  See Florida
v. Royer, 460 U.S. 491, 499-500 (1983).  In this circuit, the
Court is required to evaluate "the law enforcement purposes
served by the detention, the diligence with which the police
pursue the investigation, the scope and intrusiveness of the
detention, and the duration of the detention.  See United States
v. Acosta, 363 F.3d 1141 (11th Cir. 2004) (quoting United States
v. Gil, 204 F.3d 1347, 1351 (11th Cir. 2000).

As to the law enforcement purposes served by detention, the
most important consideration is whether the police detained
Plaintiffs to pursue a method of investigation that was likely to
confirm or quickly dispel their suspicions.  In this case, the
Court finds that Defendants used the tools available to them to
quickly dispel their suspicions by searching Plaintiffs' vehicle
and the computer database.  While Plaintiffs were handcuffed for
twenty minutes, there is no indication that Defendants were not
diligent during the investigation.

Plaintiff Noe Gonzalez argues that once he was out of his
vehicle, he immediately told Defendants the motor vehicle was his
and the papers were inside the car.  Defendants believed that
Plaintiffs were felons at the inception of the stop and were

16

Case No. 8:04-CV-889-T-17TGW

reasonable in drawing weapons and securing Plaintiffs in handcuffs before conducting their investigation.  The immediate notice does not render further investigation unreasonable. Plaintiffs have argued that a reasonable officer would have, upon stopping the Gonzalezes and asking a series of questions, looked at the registration to determine if, in fact, Plaintiffs were the true owners of the vehicle as they claimed, and would have run the tag number a second time, in light of factual differences between the stolen vehicle and Plaintiffs' vehicle.  The Court is not willing to second guess the decision made by Defendants to secure Plaintiffs before investigating further.

As to whether the scope and intrusiveness of the detention exceed the amount reasonably needed by the police to ensure their personal safety, the Supreme Court has stated that officers may take reasonable steps to ensure their safety as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous.  Ordering Plaintiff Noe Gonzalez out of his vehicle, frisking him and detaining him in handcuffs in the back of a police cruiser is undeniably a severe intrusion.  Detaining Maria Gonzalez in handcuffs on her knees is only a slightly less severe intrusion.  Nevertheless, Defendants had information from a trustworthy source that Plaintiffs were felons, and this information renders the severe intrusion reasonable.

As to the duration of the stop, there is no "bright line" test for evaluating the reasonableness of the duration of an investigative stop.  The Supreme Court counsels the use of "common sense and ordinary human experience" rather than rigid criteria.  See United States v. Sharpe, 470 U.S. 675, 685 (1985).

17

Case No. 8:04-CV-889-T-17TGW

The factual situation in this case involves decisions by police officers in the field, and the Court finds that twenty minutes is reasonable in relation to the purpose of the stop.

After consideration, the Court grants Defendants' Motion for Summary Judgment on the basis of qualified immunity based on the presence of arguable reasonable suspicion.

7.  Arguable Probable Cause to Arrest

Probable cause to arrest is established when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances, that the suspect has committed or is about to commit an offense." See Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998).  Arguable probable cause exists where a law enforcement officer "reasonably could have believed that probable cause existed, in light of the information the officer possessed." See Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Defendants detained Plaintiffs with the intent to arrest Plaintiffs.  However, during Plaintiffs' detention on the scene of the investigatory stop, Defendants discovered that Plaintiffs' motor vehicle was in fact their own vehicle, and Plaintiffs were then released.  The Court concludes therefore that the detention did not mature into an arrest.  If there was an arrest, the same facts which provide the basis for the presence of arguable reasonable suspicion also provide the basis for the presence of arguable probable cause.  The Court therefore grants Defendants' Motion for Summary Judgment as to qualified immunity based on the

18

Case No. 8:04-CV-889-T-17TGW

presence of arguable probable cause.

8.  Excessive Force

The Court found that Plaintiffs' detention was supported by the presence of arguable reasonable suspicion.  The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  See Graham v. Conner, 490 U.S. 386, 396 (1989). The Eleventh Circuit Court of Appeals recognizes that the typical arrest involves the use of some force and injury.  See Nolin v. Isbell, 207 F.3d 1253, 1257-58 (11th Cir. 2000).


The Court notes that the determination of whether an officer used excessive force "turns on a number of factors, such as 'the severity of the crime, whether the suspect pose[d] an immediate threat, and whether the suspect [was] resisting or fleeing.  The use of force must be judged on a case by case basis.  Because of the lack of a bright-line standard, 'qualified immunity applies unless the application of the standard would inevitably lead' a reasonable officer in the defendant's position to conclude that the force was unlawful."  See Gold v. City of Miami, 121 F.3d 1442 (11th Cir. 1997).  The Court is required to evaluate the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  See Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993).

Case No. 8:04-CV-889-T-17TGW

In this case, Defendants relied on mistaken information that Plaintiffs stole their motor vehicle, and Defendants executed a felony traffic stop.  Both Defendants ordered Plaintiffs to exit the vehicle at gunpoint, and secured Plaintiffs in handcuffs. Plaintiffs did not suffer physical injuries, and complain of emotional damages based on the stop and detention.

The crime involved in this case is a felony.  Plaintiffs did pose an immediate threat in that the area in which Plaintiffs were stopped is populated. It is undisputed that Plaintiffs did not resist Defendants upon being stopped.  Because Plaintiffs were driving, and Defendants' knowledge was that the vehicle was stolen, Defendants could reasonably have thought that Plaintiffs were fleeing.  Defendants' belief that the motor vehicle was stolen, Defendants' own safety, and the necessity of executing the felony stop in a populated area justifies the use of weapons in stopping Plaintiffs.  The nature of the injuries known to Defendants was not such that it would inevitably lead a reasonable officer in their position, knowing what Defendants knew at the time they executed the investigatory stop, to conclude that the force used to restrain Plaintiffs was unlawful.

After consideration, the Court grants Defendants' Motion for summary Judgment as to this issue on the basis of qualified immunity.

9.  Other Claims - Fourteenth Amendment, Fifth Amendment

After consideration, the Court finds that Plaintiffs' claims are properly addressed under the Fourth Amendment rather than the

Case No. 8:04-CV-889-T-17TGW

Fourteenth Amendment.  The Court also finds that no relief is
available to Plaintiffs under the Fifth Amendment in that all
Defendants are state actors.  The Court therefore grants the
Motion for Summary Judgment to Defendants as to these claims.

C.  Count I - City of Lakeland
D.  Count II - Polk County Sheriff's Office

     Since the Court has granted summary judgment on the basis of
qualified immunity to Defendants Mort and Rauch based on the
presence of arguable reasonable suspicion to stop and detain
Defendants, the Court also grants the Motion for Summary Judgment
to Defendants City of Lakeland and Polk County Sheriff's Office.
Accordingly, it is

     **ORDERED** that Defendants' Motion for Summary Judgment (Dkt.
31) is **granted**.  The Clerk of Court shall enter judgment for
Defendants and close this case.

     **DONE and ORDERED** in Chambers, in Tampa, Florida on this
12th day of May, 2006.

_____

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record

21